ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CBS SERVICES INC., a California corporation; OSMAR EDUARDO ALBILLO, an individual; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>2. **MONETARY DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT**<br><br>3. **MONETARY DAMAGES THROUGH ENFORCEMENT OF LICENSE BOND**<br><br>4. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>5. **INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS**<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a)] |

370615.2

1

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## JURISDICTION AND VENUE

1.       This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer, an individual (who is an officer of the employer) and the employer's license bond surety.  It is brought in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the employer is bound, a settlement agreement (between the plans and both the employer and individual officer), the employer's license bond and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employer, including through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1), the settlement agreement (Claim 2) and the license bond (Claim 3); (b) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 4); and (c) compel the employer to timely and fully report and pay its monthly fringe benefit contributions to the plans on behalf of its employees (Claim 5). This Court has jurisdiction over Claims 1, 2, 4 and 5 pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has supplemental jurisdiction over Claim 3 pursuant to 28 U.S.C. § 1367(a).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

**PARTIES**

2.      Plaintiff ("ADMINCO") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans:  Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds"). Each of the Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Trust Funds exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  ADMINCO and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3.      ADMINCO is informed and believes, and on that basis alleges,that defendant CBS Services Inc. ("EMPLOYER"):  is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Torrance, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

4.      ADMINCO is informed and believes, and on that basis alleges, that Osmar Eduardo Albillo ("PRINCIPAL") is an individual who resides in the County

of Los Angeles, State of California and is, and at all times relevant to this complaint, including all times since at least November 14, 2008 and all times during which the events giving rise to the liabilities alleged in this complaint occurred, an officer and managing agent of the EMPLOYER, including its chief executive officer, president, secretary, chief financial officer and registered managing officer.

5.      ADMINCO is informed and believes, and on that basis alleges, that defendant American Contractors Indemnity Company ("LICENSE BOND SURETY") is a California corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Los Angeles, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

## AGREEMENTS; LICENSE BOND

6.      The EMPLOYER is, and at all times relevant to this complaint, including all times since at least November 14, 2008 and all times during which the events giving rise to the liabilities alleged in this complaint occurred, bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including one known as the Southern California Master Labor Agreement.

7.      Pursuant to the Construction Master Labor Agreements, employers become – and the EMPLOYER became and is – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").  When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

8.      Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

9.      Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

10.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

11.     The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

12.     Under the terms of the Agreements, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contribution s that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

13.     Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds.  If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

14.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the EMPLOYER, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due, and that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to ADMINCO.

15.     The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

16.     ADMINCO is informed and believes, and on that basis alleges, that in order to adhere to California Business and Professions Code § 7071.6(a), the EMPLOYER obtained a license bond from the LICENSE BOND SURETY in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board.  The bond referenced in this paragraph is referred to hereinafter as the "License Bond."

17.     ADMINCO, the EMPLOYER and PRINCIPAL entered into an agreement tolling the applicable statute of limitations for the Trust Funds (including ADMINCO on their behalf) to file suit against the EMPLOYER and PRINCIPAL to collect the monetary damages sought in the second claim for relief in this complaint ("Tolling Agreement"), which are also encompassed by, and included in, the

damages sought in the first claim for relief (other than a portion of the interest sought in the second claim for relief).  The Tolling Agreement became effective, and tolled the statute of limitations as of, March 1, 2019.  A portion – for amounts due for certain of the months of January 2011 through May 2015 totaling $19,950.68 as of October 11, 2019 (with interest continuing to accrue) – of the monetary damages sought in the second claim for relief in this complaint are also encompassed by a prior agreement entered into by ADMINCO, the EMPLOYER and PRINCIPAL tolling the statute of limitations, effective March 24, 2016. That amount is also encompassed by, and included in, the damages sought in the first claim for relief (other than a portion of the interest).

## FIRST CLAIM FOR RELIEF

**(Against the EMPLOYER for Monetary Damages**
**Due to Employee Benefit Plans)**

18.    ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 17 above as if fully set forth here.

19.    The EMPLOYER has failed to timely submit Monthly Contributions due by it to the Trust Funds.  Pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), the EMPLOYER owes the Trust Funds a known amount of $103,908.39 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for certain months from January 2011 through August 2018 ("Known Delinquency"). The Known Delinquency consists of: $48,244.24 in unpaid Monthly Contributions; $10,774.83 in interest (through October 11, 2019); $34,096.24 in liquidated damages; $5,920.00 in audit fees; $70.00 in insufficient funds check fees; and $4,803.08 for the use of subcontractors not signatory to a collective bargaining

agreement with the Laborers Union applicable to the work performed.

20.     ADMINCO will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors).  If deemed necessary by the Court, ADMINCO will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

21.     Under the terms of the Agreements and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), ADMINCO is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**(Against the EMPLOYER and PRINCIPAL for Monetary Damages**
**For Breach of Settlement Agreement)**

22.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 21 above as if fully set forth here.

23.     The Trust Funds (through ADMINCO), the EMPLOYER and the PRINCIPAL entered into a conditional settlement ("Settlement Agreement") with respect to the EMPLOYER's then-known delinquency to the Trust Funds ("Then-

Known Delinquency"). In and by the express terms of the Settlement Agreement, the PRINCIPAL: guaranteed payment of the Then-Known Delinquency subject to the TRUST FUNDS' conditional forbearance and conditional partial waiver agreed to in and by the Settlement Agreement; assumed all of the same obligations and liabilities of the EMPLOYER under the Settlement Agreement; agreed to be, and became, personally bound to the terms of this Settlement Agreement to the same extent as the EMPLOYER; and agreed to be, and became, personally liable for the amounts that come due under the terms of this Settlement Agreement to the same extent as – and jointly and severally with – the EMPLOYER, including but not limited to the total amount due upon breach of the Settlement Agreement.

24. In and by the terms of the Settlement Agreement, the Trust Funds agreed to waive a portion of the EMPLOYER's Then-Known Delinquency upon, and conditioned upon, the EMPLOYER and PRINCIPAL's full performance of the terms of the Settlement Agreement, including but not limited to payment of a portion of the Then-Known Delinquency in monthly installments ("Payment Plan Installments") and compliance with the terms of the Monthly Reporting, Monthly Contribution and audit provisions of the Agreements, as well the requirement to itemize work by project on Monthly Reports, during a "Compliance Period" extending through the term of the payment plan and the date of payment of any delinquent amounts determined to be due by a "Compliance Audit" following remittance of the Payment Plan Installments.

25. Under the express terms of the Settlement Agreement, each of the following, among other things, would constitute a default of the Settlement Agreement by the EMPLOYER and PRINCIPAL: (a) failure to timely remit Payment Plan Installments in accordance with the terms of the Settlement Agreement; (b) failure to, during the Compliance Period, comply with the

EMPLOYER's obligations under the terms of the Agreements to timely submit Monthly Reports with payment of the Monthly Contributions due.

26.     Under the express terms of the Settlement Agreement, each of the following, among other things, would constitute a breach of the Settlement Agreement by the EMPLOYER and PRINCIPAL: (a) failure to comply with the terms of, or satisfy a condition set forth in, the Settlement Agreement that is not a Default as defined in the Settlement Agreement (and thus subject to the cure provisions of the Settlement Agreement); (b) failure to cure a Default of the Settlement Agreement in the manner provided for in the Settlement Agreement; and (c) failure to comply with the requirement to itemize work by project on the EMPLOYER's Monthly Reports.

27.     The EMPLOYER and PRINCIPAL breached the Settlement Agreement, including but not necessarily limited to in at least the following ways: (a) failing to timely submit Payment Plan Installments, thereby Defaulting on the Settlement Agreement, and thereafter failing to cure their Defaults in the manner provided for under the terms of the Settlement Agreement; (b) failing to timely submit Monthly Reports and Monthly Contributions, thereby Defaulting on the Settlement Agreement, and thereafter failing to cure their Defaults in the manner provided for under the terms of the Settlement Agreement; and (c) failing to comply with the requirement to itemize work by project on the EMPLOYER's Monthly Reports.

28.     As a result of the EMPLOYER and PRINCIPAL's breach of the Settlement Agreement: (a) the conditions in the Settlement Agreement for waiver of a portion the Then-Known Delinquency were not met and the Settlement Agreement does not bar collection of any unsatisfied amounts of that delinquency; and (b) under the terms of the Settlement Agreement, the full amount of the Then-Known

Delinquency is immediately due and owing by the EMPLOYER and PRINCIPAL, jointly and severally, to the Trust Funds, minus any Payment Plan Installments made plus interest at the Trust Funds' plan rate from March 10, 2019, and the Trust Funds (including ADMINCO on their behalf) are entitled to collect that amount by any lawful means, including but not limited to through enforcement of the Settlement Agreement (as done in and by this second claim for relief) and the Construction Master Labor Agreements (as done in and by the first claim for relief of this complaint).

29.    The amount due by the EMPLOYER and PRINCIPAL, jointly and severally, for their breach of the Settlement Agreement is $101,924.38 as of October 11, 2019 plus additional interest accruing from October 11, 2019.  Any and all conditions to the EMPLOYER and PRINCIPAL's obligations under the Settlement Agreement to pay this amount have been met.

30.    Under the terms of the Settlement Agreement, ADMINCO is entitled to an award of its attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**(Against the LICENSE BOND SURETY for Monetary Damages Through Enforcement of License Bond)**

31.    ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 above as if fully set forth here.

32.    The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the License Bond under California Business and Professions Code ("Business and Professions Code")

§ 7071.5(e).

33.     ADMINCO submitted a claim against the License Bond for Monthly Contributions due by the EMPLOYER to the Trust Funds ("License Bond Claim"). Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the License Bond, the LICENSE BOND SURETY is required to pay the Trust Funds up to the penal sum of the License Bond for the failure of its principal, the EMPLOYER, to remit Monthly Contributions.

34.     The LICENSE BOND SURETY has not paid the License Bond Claim as required by the above-referenced statutes, and, upon information and belief, the terms of the License Bond.

35.     ADMINCO brings this claim for relief on behalf of the Trust Funds under Business and Professions Code § 7071.11(c)(1) to enforce the terms of the License Bond to recover a portion of the amount due by the EMPLOYER to the Trust Funds (up to the penal sum of the License Bond).

## FOURTH CLAIM FOR RELIEF

### (Against the EMPLOYER for Specific Performance of Obligation to Produce Records for Audit)

36.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 35 above as if fully set forth here.

37.     ADMINCO requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to produce its books and records in

order for ADMINCO to complete an audit to determine if additional amounts are due.

38.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

## FIFTH CLAIM FOR RELIEF

### (Against the EMPLOYER for Injunctive Relief Compelling Submission of Fringe Benefit Contributions to Employee Benefit Plans)

39.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 36 above as if fully set forth here.

40.     The EMPLOYER has repeatedly failed to comply with its obligations to the Trust Funds, including its obligations to: timely submit Monthly Reports and Monthly Contributions; fully disclose Covered Work performed on its Monthly Reports; and itemize its work by project on its Monthly Reports.

41.     By reason of the EMPLOYER's failure to comply with its Monthly Reporting and Contribution obligations, and obligation to itemize its work by project on its Monthly Reports, the Trust Funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons.  First, the Trust Funds must provide credit each month to participants and beneficiaries, including the EMPLOYER's employees, toward eligibility for fringe benefits (such as health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports.  Second, the amount of benefits payable to all

participants and beneficiaries for health insurance and pension claims, including those employed by the EMPLOYER, is actuarially determined on the basis of funds projected to be received from contributing employers (including the EMPLOYER). Third, health insurance is not provided to participants and beneficiaries, including the EMPLOYER's employees, after a certain period of non-payment of Monthly Contributions on their behalf.  Fourth, vacation pay, which is distributed by the Construction Laborers Vacation Trust for Southern California (one of the Trust Funds), is not paid to employees, including the EMPLOYER's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect amounts due by delinquent employers and thus the EMPLOYER's ongoing delinquency results in an ongoing drain on Trust Funds resources.  And, in addition, the failure of the EMPLOYER to itemize its work by project undermines the Trust Funds' ability to take steps to collect delinquent amounts through asserting project-specific claims, such as payment bond claims, stop payment notices and mechanics' liens.  Sixth, the Trust Funds lose investment income on late-paid and unpaid Monthly Contributions.

42.    The Trust Funds have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under sections 502(g)(2)(E) and 502(a)(3) of ERISA (29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3)) to issue preliminary and permanent injunctive relief ordering the EMPLOYER to comply with its obligations under the Agreements and section 515 of ERISA (29 U.S.C. § 1145) to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

43.    An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or

(g)(2)).

**WHEREFORE, ADMINCO prays for judgment as follows:**

<u>ON ADMINCO'S FIRST CLAIM FOR RELIEF</u>

[Against the EMPLOYER for Monetary Damages of Unpaid Fringe Benefit Contributions and Related Damages Due to Employee Benefit Plans]

A.     For $48,244.24 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.     For $10,774.83  in interest through October 11, 2019 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from October 11, 2019, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.     For $34,096.24 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.     For $5,920.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.     For $70.00 in insufficient funds check fees, as required by the Agreements and provided under 29 U.S.C. § 1132(g)(2)(E).

F.      For $4,803.08 for the use of subcontractors not signatory to a collective bargaining agreement with the Laborers Union, as required by the Agreements.

G.      For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

H.      For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

I.      For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON ADMINCO'S SECOND CLAIM FOR RELIEF

[Against the EMPLOYER and PRINCIPAL for Monetary Damages for Breach of Settlement Agreement]

A.      For $101,924.38 as of October 11, 2019, pursuant to the Settlement Agreement and applicable law, including but not limited to California Civil Code § 3302, and any other damages arising from the EMPLOYER's breach of the Settlement Agreement.

B.      For interest at the Trust Funds' plan rate(s) per annum from October 11, 2019, pursuant to terms of the Settlement Agreement and applicable law, including

but not limited to California Civil Code §§ 3287, 3289 and 3302.

C.      For attorneys' fees and costs of collection, pursuant to the Settlement Agreement and applicable law, including but not limited to California Civil Procedure Code § 1032(b) and California Civil Code § 1717.

D.      For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including, but not limited to, the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3)(B).

<u>ON ADMINCO'S THIRD CLAIM FOR RELIEF</u>

[Against the LICENSE BOND SURETY for Monetary Damages Through Enforcement of the License Bond]

A.      For enforcement of the License Bond pursuant to California Business and Professions Code §§ 7071.5(e) and 7071.11(a).

B.      For the penal sum of the License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the License Bond Claim became due.

C.      For reasonable attorneys' fees and costs.

D.      For such other relief that this Court deems appropriate.

///
///
///

370615.2

18

<u>ON ADMINCO'S FOURTH CLAIM FOR RELIEF</u>

[Against the EMPLOYER for Specific

Performance of Obligation to Produce Records for Audit]

A.    For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records from at least January 1, 2018 forward, to fully cooperate with ADMINCO with respect to the audit in order for ADMINCO to determine the total amount due to the Trust Funds by the EMPLOYER, and, specifically, to produce to ADMINCO the following payroll and business records – and any other records determined by ADMINCO to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the EMPLOYER, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the EMPLOYER, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the

names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the EMPLOYER's job files for each contract, project or job on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the EMPLOYER's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.3.   All of the EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.4.   All of the EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts

1   payable journals, check registers and all other records which indicate disbursements;

2

3           A.6.   All collective bargaining agreements between the EMPLOYER

4   and any trade union, and all records of contributions by the EMPLOYER to any trade

5   union trust fund; and

6

7           A.7.   All records related to the formation, licensing, renewal or

8   operation of the EMPLOYER.

9

10      B.   For reasonable attorneys' fees and costs of suit, as required by the

11  Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

12

13      C.   For such other relief that this Court deems appropriate, pursuant to any

14  authority of the Court, including but not limited to the authority established by

15  29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

16

17          <u>ON ADMINCO'S FIFTH CLAIM FOR RELIEF</u>

18      [Against the EMPLOYER for Injunctive Relief Compelling Submission of

19          Fringe Benefit Contributions to Employee Benefit Plans]

20

21      A.   For the issuance of injunctive relief pursuant to the Agreements

22  and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its

23  managing officers, managing employees, agents and successors, as well as all those

24  in active concert or participation with any one or more of them, to deliver, or cause to

25  be delivered to the Trust Funds:

26

27          A.1.   All past due monthly fringe benefit contribution report forms due

28  by the EMPLOYER to the Trust Funds, fully completed to indicate hours of work

performed by the EMPLOYER's employees for which fringe benefit contributions are due by the EMPLOYER and the corresponding amounts of fringe benefit contributions due by the EMPLOYER to the Trust Funds, if any, or, if no such hours of work were performed for a given month, an indication on the report form of that fact.

A.2.  No later than 4:30 p.m. on the 15th day of each month for the duration of the Agreements:

A.2(a).  Truthfully and accurately completed Monthly Report(s) covering all of the EMPLOYER's accounts with the Trust Funds, collectively identifying all persons for whom Monthly Contributions are owed to the Trust Funds for the previous month and their Social Security numbers, and, itemized by person and project, the hours of work performed for which Monthly Contributions are due;

A.2(b).  An affidavit or declaration from a managing officer or other managing agent of the EMPLOYER attesting under penalty of perjury to the completeness, truthfulness and accuracy of each Monthly Report submitted; and

A.2(c).  A cashier's check or checks made payable to the "Construction Laborers Trust Funds for Southern California" totaling the full amount of Monthly Contributions due to the Trust Funds for the previous month.

B.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

C.    For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by

29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).


DATED: October 14, 2019                    REICH, ADELL & CVITAN
                                           A Professional Law Corporation


                                           By: _____/s/_____
                                                    PETER A. HUTCHINSON
                                                    Attorneys for Plaintiff